---------------------------------------------------------------- X

MICHAEL POPE,

                Plaintiff,

-against-

JOSEPH F. RICE; MOTLEY RICE LLC; and
NESS MOTLEY PA,

                Defendants.

---------------------------------------------------------------- X

**04 CV 4171**

**COMPLAINT**

04 Civ.

**ECF CASE**

Plaintiff, Michael Pope, through his attorneys, Cohn Pope PLLC, for his complaint alleges as follows:

     1.     This is an action for breach of fiduciary duty and fraudulent omission. It arises from the corrupt and corrupting conduct of Joseph F. Rice and the law firm to which he belongs. The plaintiff seeks equitable relief, as well as compensatory and punitive damages.

### JURISDICTION AND VENUE

     2.     This court has jurisdiction over the subject matter of this action because the plaintiff and defendants are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

     3.     This court has personal jurisdiction over the defendants in this action because the claims arise from (i) the transaction by the defendants of business in this state and (ii) torts committed by the defendants outside the state causing injury within the state, and the defendants reasonably expected their acts to have consequences in the state and derive substantial revenue from interstate commerce.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------------- X
MICHAEL POPE,                                   :
                                                :
                Plaintiff,                      :
                                                :       COMPLAINT
-against-                                       :
                                                :       04 Civ.
JOSEPH F. RICE; MOTLEY RICE LLC; and            :
NESS MOTLEY PA,                                 :
                                                :
                Defendants.                     :
------------------------------------------------------------------- X
```

Plaintiff, Michael Pope, through his attorneys, Cohen Pope PLLC, for his complaint alleges as follows:

1.      This is an action for breach of fiduciary duty and fraudulent omission. It arises from the corrupt and corrupting conduct of Joseph F. Rice and the law firm to which he belongs. The plaintiff seeks equitable relief, as well as compensatory and punitive damages.

## JURISDICTION AND VENUE

2.      This court has jurisdiction over the subject matter of this action because the plaintiff and defendants are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3.      This court has personal jurisdiction over the defendants in this action because the claims arise from (i) the transaction by the defendants of business in this state and (ii) torts committed by the defendants outside the state causing injury within the state, and the defendants reasonably expected their acts to have consequences in the state and derive substantial revenue from interstate commerce.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) (2) and (3) because a substantial part of the events or omissions giving rise to the claim occurred in this district, and the defendants are subject to personal jurisdiction in this district.

## THE PARTIES

5.      Plaintiff Michael Pope ("Pope") is a citizen of the State of New York, residing in New York County.  In or around 1997, Pope was diagnosed as having an asbestos-related disease.

6.      Defendant Joseph F. Rice is a citizen of, and a lawyer admitted to practice in, the state of South Carolina.

7.      Defendant Motley Rice LLC ("Motley Rice") is a limited liability corporation formed for the practice of law and organized under the laws of the state of South Carolina, with its principal place of business at 28 Bridgeside Blvd., Mt. Pleasant, South Carolina.  Defendant Rice is a member and/or shareholder of Motley Rice.

8.      Upon information and belief, none of the members of Motley Rice currently is a citizen of the state of New York.

9.      Defendant Ness Motley PA ("Ness Motley") was, upon information and belief, a professional association formed for the practice of law and organized under the laws of the state of South Carolina, with its principal place of business in Mt. Pleasant, South Carolina.  Defendant Ness Motley was the predecessor in interest to Motley Rice. Before he was a member and/or shareholder of Motley Rice, Rice was a member and/or shareholder of Ness Motley.

10.     Upon information and belief, none of the former members and/or shareholders of Ness Motley currently is a citizen of the state of New York.

2

11.    Rice, Motley Rice and Ness Motley are sometimes collectively referred to herein simply as the "Rice Group."

## FACTUAL BACKGROUND

### The Rice Group's Representation of Pope

12.    Pope has, and since 1999 has had, unliquidated claims for asbestos personal injury pending against, among others, Combustion Engineering, Inc.; ACandS, Inc.; various Halliburton entities (referred to hereafter simply as "Halliburton"); Shook and Fletcher, Inc.; and the North American Refractories Co. ("NARCO").

13.    Since in or around 2002 and continuing to date, the Rice Group has, without Pope's knowledge, been acting as one of the attorneys for Pope in the negotiation and settlement of his asbestos personal injury claims against Combustion Engineering, ACandS, Halliburton, Shook and Fletcher and NARCO.

14.    Upon information and belief, Rice and counsel affiliated with the Rice Group have, among other things, signed settlement agreements with Combustion Engineering, ACandS, Halliburton, Shook and Fletcher and NARCO, which settled Pope's asbestos personal injury claims.

15.    Upon information and belief, the Rice Group negotiated the settlement agreements with Combustion Engineering, ACandS, Halliburton, Shook and Fletcher and NARCO during the period starting in or around mid-2002 and ending in or around mid-2003.

16.    Upon information and belief, the Rice Group negotiated the settlement agreement with ACandS from the fall of 2002 until in or around April 2003. Upon information and belief, Rice, among others, signed the settlement agreement with

3

ACandS on Pope's behalf in or around April 2003. Upon information and belief, Rice signed individually and as a member of Motley Rice.

17.     Upon information and belief, the Rice Group negotiated the settlement agreement with Halliburton from the summer of 2002 until in or around April 2003. Rice, among others, signed the settlement agreement with Halliburton on Pope's behalf in or around April 2003. Upon information and belief, Rice signed individually and as a member of Motley Rice.

18.     Upon information and belief, the Rice Group negotiated the settlement agreement with Shook and Fletcher during the period from late 2001 until early 2002. Upon information and belief, Rice, among others, signed the settlement agreement with Shook and Fletcher in or around February 25, 2002. Upon information and belief, Rice signed individually and as a member of Motley Rice.

19.     Upon information and belief, the Rice Group negotiated the settlement agreement with NARCO from early 2003 until in or around the summer of 2003. Upon information and belief, Rice, among others, signed the settlement agreement with NARCO on Pope's behalf in or around the summer of 2003. Upon information and belief, Rice signed individually and as a member of Motley Rice.

20.     The Rice Group negotiated a "Master Settlement Agreement" with Combustion Engineering from October 2002 until November 2002. The "Master Settlement Agreement" was signed by Rice as "Claimants' Representative" on or about November 22, 2002. Upon information and belief, Rice signed individually and as a member of Ness Motley.

21.     During all or part of the process of negotiating the "Master Settlement Agreement" with Combustion Engineering, Rice held himself out as the legal representative of all individuals who had asbestos personal injury claims against Combustion Engineering, including Pope.

22.     Upon information and belief, Rice, acting as the representative of the claimants, was responsible for negotiating most, if not all, of the material terms of the Combustion Engineering, ACandS, Halliburton, Shook and Fletcher and NARCO settlement agreements.

23.     Pope was not informed of and did not consent to any of the above-mentioned settlement agreements.

**The Pre-Packaged Bankruptcies**

24.     The Rice Group negotiated the settlement agreements with Combustion Engineering, ACandS, Halliburton, Shook and Fletcher and NARCO as part and in anticipation of "pre-packaged" bankruptcy plans.

25.     Upon information and belief, Rice, acting as representative of the claimants, was responsible for negotiating most, if not all, of the material terms of the Combustion Engineering, ACandS, Halliburton, Shook and Fletcher and NARCO "pre-packaged" bankruptcy plans.

**The Combustion Engineering "Pre-Packaged" Bankruptcy Plan**

26.     In connection with the Combustion Engineering "pre-packaged" bankruptcy plan, the Rice Group negotiated, among other things, the amount of money that Combustion Engineering, its immediate parent (Asea Brown Boveri, Inc.), and its ultimate parent (Asea Brown Boveri, Ltd.) (sometimes collectively referred to herein as

the "Combustion Engineering Group") contributed to a pre-bankruptcy petition trust (the "CE Settlement Trust"). Funds contributed by the Combustion Engineering Group to the CE Settlement Trust are used to pay asbestos personal injury victims who filed claims against Combustion Engineering on or before November 14, 2002.

27.     Upon information and belief, the Combustion Engineering Group contributed less to the CE Settlement Trust than it otherwise would have, because Rice and the Combustion Engineering Group agreed to a reduced amount, and because $20,000,000 that otherwise would have been available to the trust was diverted by the Combustion Engineering Group to Rice as a "success fee."

28.     Rice's allegiance to and representation of the Combustion Engineering Group was a substantial factor, if not the direct cause, of the reduced funding of the CE Settlement Trust.

29.     Also in connection with the Combustion Engineering "pre-packaged" bankruptcy plan, Rice negotiated a special pre-bankruptcy petition fund (the "Special Pre-Petition Fund") in the amount of approximately $30,000,000. Upon information and belief, as negotiated by Rice, the Special Pre-Petition Fund is reserved exclusively for individuals who had, but might not have filed by November 14, 2002, asbestos personal injury claims against Combustion Engineering.

30.     Upon information and belief, most of the individuals for whom the Special Fund was reserved have the same asbestos-related disease as Pope.

31.     As a result of the Rice Group's undisclosed negotiation of the Special Pre-Petition Trust, the CE Trust was deprived of approximately $30,000,000, to the detriment of Pope.

32.      Pope was not informed of and did not consent to the Special Pre-Petition Fund, nor is he eligible for any payment from that fund.

33.      As negotiated by Rice, the CE Settlement Trust provides for three levels, or "categories," of payment, depending upon the procedural status of an individual's claim.  Category 1 claimants will receive 95% of the value of their claim; Category 2 claimants will receive 85%; and Category 3 claimants are to receive between 37 ½ and 75%.  As a result, claimants with identical asbestos-related diseases will receive different amounts (and will be paid on different dates) merely on the basis of how far their claims have progressed in the litigation and settlement process.

34.      Pope falls into Category 3 of the CE Settlement Trust.

35.      Pope was not informed of and did not consent to the above-mentioned "Category" scheme (*see supra* ¶ 33).

36.      Upon information and belief, as a result of Rice' allegiance to and representation of the Combustion Engineering Group, Rice agreed to a Master Settlement and pre-petition plan that, upon information and belief, will ultimately yield to Pope less than Pope would have obtained had there been no such agreement or plan.

**The Rice Group's Conflicts Of Interest In Combustion Engineering**

> Undisclosed, Simultaneous, Adverse Representation
> Of The Combustion Engineering Group And Pope

37.      At the same time the Rice Group was representing Pope in connection with his asbestos personal injury claims against ACandS, Halliburton, Shook and Fletcher and NARCO, Rice was advising the immediate and ultimate parents of Combustion Engineering – a company against which Pope had and has an unliquidated claim for asbestos personal injury.

38.     In particular, Rice was advising the Combustion Engineering Group about how it could file a "pre-packaged" bankruptcy plan that would limit its liability for asbestos personal injury claims.

39.     Pope was not informed of and did not consent to this simultaneous, adverse representation.

40.     At the same time Rice was representing "all claimants" (including Pope) in connection with their asbestos personal injury claims *against* the Combustion Engineering Group, Rice was advising the Combustion Engineering Group about how it could limit its liability for asbestos personal injury claims.

41.     Pope was not informed of and did not consent to Rice's simultaneous, adverse representation.

42.     The Combustion Engineering Group agreed to pay Rice a fee of $20,000,000 for legal and other advice he provided to it about how it could limit its liability for asbestos personal injury claims.

43.     The fee that the Combustion Engineering Group agreed to pay Rice was structured as a "success fee," meaning that it was payable in installments as certain milestones were reached in the Combustion Engineering bankruptcy proceeding.

44.     Upon information and belief, Rice has received more than $13,000,000 of the payment promised by the Combustion Engineering Group.

45.     Rice's agreement with the Combustion Engineering Group to accept these payments and his receipt of a portion of them occurred while Rice was representing all persons with asbestos personal injury claims against the Combustion Engineering Group, including Pope.

8

46.     Rice's agreement to accept these payments and his receipt of a portion of them occurred while Pope had (and still has) a pending asbestos personal injury claim against the Combustion Engineering Group.

47.     Rice's agreement to accept these payments and his receipt of a portion of them occurred while the Rice Group was (or is) representing Pope in his asbestos personal injury claims against ACandS, Halliburton, Shook and Fletcher and NARCO.

48.     Pope was not informed of and did not consent to any payment by the Combustion Engineering Group to Rice.

49.     The funds paid by the Combustion Engineering Group to the Rice could and should have been used to fund the CE Settlement Trust.

Undisclosed, Simultaneous, Adverse Representation Of Thousands Of Claimants With Competing Claims Against The Combustion Engineering Group

50.     While the Rice Group was representing Pope in connection with his asbestos personal injury claims, it was -- without Pope's knowledge or consent -- also representing hundreds (or thousands) of others who had competing claims against the Combustion Engineering Group.

51.     As a result of the Rice Group's undisclosed, simultaneous, and adverse representation of thousands of individuals with claims against the Combustion Engineering Group that competed with Pope's, the Rice Group has and had a conflict of interest.

52.     As a result of that conflict of interest, the Rice Group agreed to a "Category" scheme for distribution of the CE Settlement Trust, which resulted in differing payments and differing payment dates to claimants with identical diseases, to the detriment of Pope (see supra ¶ 33).

**The Bankruptcy Court Has Ruled That Rice Has A Conflict of Interest In The Combustion Engineering Case**

53.　On or about June 23, 2003, following a lengthy hearing, the Honorable

Judith K. Fitzgerald, Chief Judge of the United States Bankruptcy Court in the District of

Delaware issued a recommendation withholding confirmation of the Combustion

Engineering bankruptcy plan.  Because Rice was engaged in the undisclosed,

simultaneous, adverse representation of the Combustion Engineering Group and

individuals who had asbestos personal injury claims against the group, Chief Judge

Fitzgerald wrote: "I find that Mr. Rice has an actual conflict in this case." *In Re*

*Combustion Engineering,* 295 B.R. 459, 478 (Bkrtcy. D. Del 2003*).*  Chief Judge

Fitzgerald also found that Rice's agreement to be paid $20,000,000 by the Combustion

Engineering Group while identifying himself as the representative of all asbestos

personal injury claimants "was inappropriate," but that she lacked jurisdiction to fashion

a remedy. *Id.* at 479

### FIRST CLAIM FOR RELIEF
### (Breach of Fiduciary Duty)

54.　Pope repeats and realleges paragraphs 1 through 53 of this complaint.

55.　Because it represented and/or continues to represent Pope in his asbestos

personal injury claims against Combustion Engineering, ACandS, Halliburton, Shook and

Fletcher and NARCO, the Rice Group owes (and at all times relevant to the matters

alleged in this complaint has owed) a fiduciary duty to Pope.

56.　That fiduciary duty includes, but is not limited to, undivided loyalty to

Pope.

10

57.     The Rice Group breached its fiduciary duty to Pope by, among other things, advising the Combustion Engineering Group about how to limit its liability for asbestos personal injury claims while representing Pope, who had such a claim against the Combustion Engineering Group.

58.     The Rice Group breached its fiduciary duty to Pope by, among other things, agreeing to accept $20,000,000 from the Combustion Engineering Group in exchange for advising it about how to limit its liability for asbestos personal injury claims while representing Pope, who had such a claim against the Combustion Engineering Group.

59.     The Rice Group breached its fiduciary duty to Pope by, among other things, actually receiving payment from the Combustion Engineering Group while representing Pope, who had a claim adverse to the that group.

60.     The payments received or due to be received by Rice from the Combustion Engineering Group were (or will be) received in bad faith and in violation of the Rice Group's fiduciary duty to Pope.

61.     The payments received or due to be received by Rice from the Combustion Engineering Group properly could and should have been paid to the CE Settlement Trust.

62.     The payments received or due to be received by Rice are a benefit, the retention of which is unjust.

63.     The Rice Group's breach of fiduciary duty was willful and wanton.

64.     Pope has been injured by the Rice Group's breach of fiduciary duty.

65.    Pope's injury is not compensable by damages and there is no adequate remedy at law.

66.    By reason of the foregoing, Pope is entitled to an order directing Rice to disgorge to the CE Settlement Trust all or a portion of the $20,000,000 received from, or due to be paid by, the Combustion Engineering Group.

## SECOND CLAIM FOR RELIEF
### (Breach of Fiduciary Duty)

67.    Pope repeats and realleges paragraphs 1 through 66 of this complaint.

68.    The Rice Group breached its fiduciary duty to Pope by, among other things, agreeing to a CE Settlement Trust funded in an amount substantially less than the Rice Group would have agreed to had it not simultaneously been (i) representing and receiving payments from the Combustion Engineering Group and (ii) representing thousands of individuals, including Pope, who had asbestos personal injury claims against the Combustion Engineering Group.

69.    The Rice Group breached its fiduciary duty to Pope by, among other things, negotiating a Master Settlement Agreement that provided for different "categories" of payment to claimants with identical diseases and different payment dates, solely on the basis of when the procedural status of the individual's claim, to the detriment of Pope.

70.    The Rice Group breached its fiduciary duty to Pope by, among other things, negotiating the Special Pre-Petition Fund, amounting to approximately $30,000,000, exclusively for individuals (other than Pope) who had the same asbestos related disease as Pope.

12

71.    The Rice Group breached its fiduciary duty to Pope by, among other things, agreeing to a Master Settlement Agreement and a pre-petition plan on behalf of all claimants, which (upon information and belief) will ultimately yield to Pope less than Pope would have obtained had there been no such agreement or plan.

72.    Pope has been injured by the Rice Group's breaches of fiduciary duty in an amount to be determined at trial, but in excess of $100,000.

### THIRD CLAIM FOR RELIEF
### (Fraudulent Omission)

73.    Pope repeats and realleges paragraphs 1 through 72 of this complaint.

74.    At all times relevant to the matters alleged in this complaint, the Rice Group owed a fiduciary duty to Pope.

75.    The Rice Group's fiduciary duty includes, but is not limited to, a duty to disclose to Pope all facts material to his asbestos personal injury claims against Combustion Engineering, ACandS, Halliburton, Shook and Fletcher and NARCO.

76.    The Rice Group's fiduciary duty also includes, but is not limited to, a duty to disclose to Pope that, while (i) the Rice Group was representing Pope with respect to his asbestos personal injury claims and (ii) Pope had such a claim adverse to the Combustion Engineering Group, Rice was advising the Combustion Engineering Group about how to limit its asbestos personal injury liability.

77.    The Rice Group's fiduciary duty also includes, but is not limited to, a duty to disclose to Pope that, while (i) the Rice Group was representing Pope with respect to his asbestos personal injury claims and (ii) Pope had such a claim adverse to the Combustion Engineering Group, Rice agreed to receive $20,000,000 from the Combustion Engineering Group, and did receive approximately $13,000,000.

13

78.     The Rice Group's fiduciary duty also includes, but it not limited to, a duty to disclose to Pope that Rice agreed, in the Combustion Engineering case, to a Master Settlement Agreement that provided for three "Categories" of payments to claimants with the disease identical to Pope's, which categories received different amounts solely because of the procedural status of the individual's claim against the Combustion Engineering Group.

79.     The Rice Group's fiduciary duty also includes, but is not limited to, a duty to disclose to Pope the Rice Group's simultaneous, adverse representation of hundreds (if not thousands) of individuals with competing asbestos personal injury claims against the same companies against which Pope has such claims.

80.     The facts set forth in paragraphs 75 through 78 (hereafter, the "Material Facts") were known to the Rice Group, and were material to Pope's asbestos personal injury claims.

81.     The Material Facts were not available to Pope.

82.     The Rice Group failed to disclose to Pope the Material Facts.

83.     The Rice Group's failure to disclose the Material Facts to Pope was either knowing or reckless.

84.     Pope was justifiably deceived by the Rice Group's failure to disclose the Material Facts.

85.     Pope was damaged by the Rice Group's non-disclosures.  Among other things, the undisclosed, divided loyalties of the Rice Group have resulted in settlements and bankruptcy plans that, upon information and belief, will yield less to Pope had the Rice Group abided its fiduciary duties to him.

86.    The amount of damages resulting from the Rice Group's non-disclosures will be established at trial, but in excess of $100,000.

WHEREFORE, Michael Pope demands judgment against the defendants, jointly and severally:

1.    Ordering disgorgement to the CE Settlement Trust of all or part of the payments received or due to be received by Rice from the Combustion Engineering Group;

2.    Granting compensatory damages in an amount to be determined at trial, but not less than $100,000;

3.    Granting punitive damages in an amount to be determined at trial, but not less than $500,000; and

4.    For such other relief as is just.


Dated:  New York, New York
        June 3, 2004


COHEN POPE PLLC

By:_____
    Joseph D. Pope (JP-0326)
    10 East 53rd Street
    New York, New York 10022
    Tel. (212) 319-7757
    Fax (646) 435-0690

Attorneys for Plaintiff, Michael Pope